CELINDA E. BAILEY *v*. LESTER S. WARNER AND AMASA WARNER.

· [IN CHANCERY.]

*Equitable interest.   Mortgage.   Substitution.   Contract.*

R. sold to L. W. a piece of land, but, by mistake, his deed described an adjoining piece to which he had no title. L. W. took possession of the place designed to have been, and which he supposed was deeded. The oratrix, being a creditor of L. W., attached all his real estate in the town, and subsequently levied upon a portion of the premises so sold, but not deeded. Between the attachment and the levy, A. W. claiming to have an equitable interest in the premises, obtained a quit-claim deed of them from R. *Held* that the oratrix acquired, by her attachment and levy, an equitable interest in that portion of the premises set off on her execution; and that, the attachment being constructive notice to A. W. of the oratrix's lien, he could not defeat her equitable right by his legal title, unless he had with it a superior equity.

A person who is substituted in place of a mortgagee may, if equity requires it, be limited, and have allowed to him a less extensive right than that to which the mortgagee himself would have been entitled.

A mortgagee cannot be compelled to rely upon a part only of the mortgaged premises, though that part may be adequate security for his claim, but one substituted in his place may be, if equity requires it.

Application of this principle in the present case.

A mere understanding, or parol agreement, that a person making advancements, or incurring a liability, shall be secured therefor upon certain real estate, will be inoperative against a *bona fide* purchaser, or an attaching creditor without notice.

APPEAL from the court of chancery. One Rockwood was the owner of the equity of redemption of a piece of land, in Burlington, mortgaged by Charles Adams, the grantor of Rockwood, to one Gates, which he (Rockwood) bargained and sold to the defendant Lester S. Warner, but, in his deed, the description, instead of commencing at the north-east corner, by mistake commenced at the south-east corner, and described, by giving courses and distances which would have been correct with the north-east corner as the starting point, a piece of land lying wholly south of that owned by him. Neither party knew of the mistake, and the grantee, Lester S. Warner, entered upon the land purchased, and which he supposed was described in his deed, and erected a house thereon, and remained thereafter in the possession and occupancy of it. While so in possession, the oratrix, being a creditor of Lester S. Warner, commenced a suit, and attached all his real estate in the town of

Burlington, and subsequently obtained a judgment against him, and took out an execution thereon, which she seasonably caused to be levied on an undivided interest in the equity of redemption of the premises so occupied by the debtor, and which was the only real estate which he owned, or was interested in at the time of the attachment. Between the time of the attachment and levy, the defendant Amasa Warner obtained from Rockwood a quit-claim deed to himself of the premises intended to have been described in the deed to Lester S. Warner. The bill alleged that this quit-claim deed was obtained without the payment of any consideration, and for the purpose of depriving the oratrix of the means of enforcing the payment of her claim, &c.; and prayed that the defendants might be decreed to make assurance and legal conveyance to the oratrix of that part of the equity of redemption which had been so set off to her, and for general relief.

The defendants, in their answer, averred that, at the time of the purchase from Rockwood, the premises were encumbered by a mortgage from him to Charles Adams, securing notes, then outstanding and unpaid, to the amount of $250, and were sold subject to that encumbrance; that, for the purpose of aiding the defendant Lester S. Warner to make said purchase, Abijah Warner agreed to give, and did give, his note to the person who then held the notes from Rockwood to Adams, under an agreement between him and both the defendants that, if Lester should go on and pay said notes, and save Abijah harmless, the premises were to become and be his property; but that he should not alienate or charge them with any incumbrance until said notes were paid, and in case either Abijah or the defendant Amasa should pay said notes, or any part of them, Lester should convey to them the premises for their security; that $195 of the $250 was paid, when it became due, by the defendant Amasa, and the remainder by Lester; that, at the time of erecting the house on said premises, the said Lester, being unable himself to raise the necessary money, applied to Amasa and promised, if he would advance money and other articles required in said building, that he would execute to him a deed of the premises to secure him for such advancements as well as for those he had previously made; and that, under this agreement, and for the purpose of aiding Lester in building the house, he

(Amasa) did make advancements to him to the amount of $451.52, and that no part of either of said sums of $195.00, or $451.52 had ever been repaid; that Amasa called upon Lester for a deed of the premises, to secure said advances, and upon their examining Rockwood's deed, it was first discovered that it did not describe, and that Lester had no title to the premises in question, and that thereupon, for the purpose of furnishing to Amasa the security promised to him, and for no improper or fraudulent purpose, it was agreed that, if the said Amasa could, he should obtain a quit-claim deed of said premises from the said Rockwood to himself, and hold the same for his security, and that thereupon the quit-claim deed was obtained; and the defendant Amasa Warner insisted that he was entitled to hold said premises as security for all of his said advances, &c.

The answers were traversed and testimony taken, and the court of chancery, March Term, 1855,—PECK, CHANCELLOR,—being of the opinion that the original mortgage for $250, might be regarded in equity as still subsisting in favor of Amasa Warner, to the amount paid by him thereon, and, aided by the deed from Rockwood to him, constitute a lien on the premises, having priority over the oratrix's attachment and levy; yet, as it appeared that the value of that portion of the premises not covered by the levy was sufficient to pay the sums paid by Amasa upon the mortgage, and, being of the opinion that the attachment and levy of the oratrix had priority over the other claims set up by Amasa Warner, decreed that the defendants severally convey by deed to the oratrix that undivided portion of the premises, which were embraced in and covered by her levy, &c.

Appeal by the defendants.

*G. F. Edmunds* for the oratrix.

An attachment is a lien upon land, of which the debtor is the equitable owner, to the same extent as upon land of which he has the legal title. Comp. Stat. 312, § 19.

The lien of the oratrix was prior to that of Amasa, for the lien of the latter never attached to the land, so as to become operative at all—it was a contract that a lien should be created *in futuro*, and not a present incumbrance.

But if a lien did exist in favor of Amasa as against Lester, it could have no effect as against the oratrix, who had no notice of it. She stands in the position of a bona fide purchaser, from the equitable owner in possession. *Bigelow* v. *Topliff*, 25 Vt. 273. *Carter* v. *Champion*, 8 Conn. 549.

The statutes of registry apply as well to the creation of liens upon equitable as upon legal estates. Comp. Stat. 384, § 7–24. *Parkist* v. *Alexander*, 1 J. C. R. 394. And the superior diligence of the oratrix in attaching, before any act on the part of Amasa, gives her the best right, inasmuch as the estate of Rockwood in the land was a dry trust. Story Eq. 421–6.

*L. E. Chittenden* and *D. Roberts* for the defendant.

I. Lester Warner, at the time the attachment was made, had a mere equitable interest in the premises. That interest only was reached by the attachment. His interest was subject to the claims of Amasa. It nowhere appeared of record and was evidenced only by his possession. The oratrix was not misled in making her attachment, by the record, for there was none, nor by the possession, for that was notice of title, according to the terms of that possession. *Pope* v. *Henry* 24 Vt. 560.

II. Amasa having paid the purchase money on the mortgage, and thereby extinguished that incumbrance, his right to hold the premises as security, to the extent of such payment, was not denied by the court below. This right rests upon a familiar principle of equity. At the time of the purchase Amasa became liable to pay this incumbrance, and, under the agreement then made, afterwards paid it; and the oratrix, in her levy, takes the benefit of such payment. Equity will, in such a case keep the mortgage on foot, for the benefit of the person who has paid the money. *Downer* v. *Fox*, 20 Vt. 388. *Paine* v. *Hathaway*, 3 Vt. 212. *Irish* v. *Clayes*, 10 Vt. 81.

III. The right of Amasa Warner to hold the premises as a security for the labor and material furnished to build the house, rests upon equally strong grounds. These advances went to enhance the value of the property. They were placed there by the legal, at the request of the equitable owner. The oratrix seeks the aid of a court of equity to put her in possession of property which

those advances have created. Before the court will lend that aid, she must repay them. *Pope* v. *Henry*, above cited. Story's Eq. Juris., vol. 2, 1236, 1237, 1238, 1239, 799 and notes— note p. 691. *Woods* v. *Scott*, 14 Vt. 518, *Bright* v. *Boyd*, 1 Story 478.

The opinion of the court was delivered by

BENNETT, J. The bill seeks a conveyance of certain real estate to the oratrix. No question can arise but what, from the bill and answers, the oratrix has made out an equitable right to relief against Lester S. Warner, and the only question as to Amasa Warner is, which has the superior equity? he or the oratrix? As the legal title was in Rockwood at the time of the service of the plaintiff's attachment, the case is to be tried upon the same principles as it would have been, if the title had still remained in him, and he made a party to the bill. Rockwood held the legal title as against Lester S. Warner, by means of a mistake in his deed to him. No question can be raised but what Rockwood could be compelled to surrender up the legal title to Lester S. Warner, who had the primary equitable title, had it continued to remain in him. The equitable right to an undivided portion of the premises was acquired by the oratrix by her attachment and levy of execution against Lester S. Warner. The attachment was constructive notice to Amasa Warner of the plaintiff's lien upon the property at the time he took his deed from Rockwood. The question then is, had Amasa an equity prior in time to that of the oratrix which he can set up to defeat or override her equity, and which will enable him to hold the legal title, against her, acquired by him subsequent to her attachment. Though it may be true that, in equity, the mortgage which was put upon this property by Lester S. Warner, and which had been paid in part by Amasa, should be kept on foot, so far as was necessary to indemnify Amasa for the sum of money he paid on the mortgage, yet this right, however, is not by force of the contract of mortgage, but arises out of the chancery principles of subrogation, and, consequently, the chancellor might well refuse to make his rights by substitution coextensive with what they would have been if he had been the mortgagee. A mortgagee cannot be compelled to rely upon a portion of his mortgaged premises, though adequate security. To

compel this, would be to make contracts for the parties, not to enforce them. But whatever rights Amasa had in this case, arising out of his having paid a part of the mortgage, being by the principles of substitution, a court of equity may set up the mortgage, so far as is necessary to protect Amasa in paying what he did under the mortgage, and decline going further, if equity requires it. So far as the residue of Amasa's claim upon the premises is concerned, it is without foundation. It rests in parol, and is within the statute of frauds, and can have no effect against a *bona fide* purchaser, or attaching creditor without notice. Amasa did not make the advancements on the supposition that they were to be attached to the mortgage given to Adams, or upon the faith of the legal title being in Rockwood, but he claims in his answer that he was to have security upon the property direct from Lester S. Warner.

In this opinion, we have gone upon the ground that the answer was responsive to the bill, and have thought it advisable to express an opinion upon the legal effect of the facts stated in the answer, although we may think the answer not responsive to the bill, (a point not decided,) as by this means there can be no occasion to apply to the chancellor, to take testimony upon the traverse of the answer. The chancellor was right in confining Amasa's claim upon the premises under the Adams mortgage, which was but an equitable one, to that portion of the premises not covered by the levy of the oratrix, as they were ample. There is no sufficient reason shown why the oratrix should not have the legal title of that part of the premises which she levied upon conveyed to her.

Ths result is the decree of the chancellor is affirmed with costs,